ORDER
RALPH F. KEEN, Justice.
Nick Lay (“Lay” or “Plaintiff”) brings this action for Declaratory Relief asking the Court to find that Legislative Act 7-97, Section 4(D) [codified as 26 CNCA Section 4(D) ], is unconstitutional, insofar as it defers reapportionment of seats on the Council of the Cherokee Nation (“Council”) until the year 2002. In conjunction therewith, Lay also seeks reapportionment of the Council seats (in accordance with a formula which has been codified as Cherokee law since September 9, 1989) prior to the 1999 general election.
Numerous parties were named as defendants in this action. By stipulation of the parties, approved by the Court on November 24, 1998, the Cherokee nation (“Defendant”) was substituted as party defendant.[1]
A recitation of the rest of the procedural history of this case is unnecessary.
All parties agree that the issues before the Court concern only an interpretation of the laws of the Cherokee nation. Therefore, by concurrence of the parties, the matter has been submitted to the Court for a decision on the pleadings, briefs and associated documents.
FACTS
Article V, Section 3, of the Cherokee Constitution was amended by referendum of the Cherokee people on June 20, 1987. That provision of the Cherokee Constitution, as amended, provides:
The Council shall consist of fifteen (15) members, who are members by blood of the Cherokee Nation of Oklahoma. Each Council member shall be elected in the general election for a term of four (4) years and until his successor is duly elected and installed.
The Council shall establish representative districts which shall be within the historical boundaries of the Cherokee nation of Oklahoma. These districts shall be apportioned to afford a, reasonably equal division of tribal membership among the districts [emphasis added].
The last sentence, shown in italics, forms the core of the legal issues in this lawsuit.
Implementing the 1987 amendment, the Council passed Legislative Act 35-89, effective September 9, 1989, codified as 26 CNCA Section 4, which established nine (9) representative districts within the historic boundaries of the Cherokee Nation. The enactment also established a formula[2] *25 based upon membership population for determining how to divided the fifteen (15) Council seats among the nine (9) districts. Neither the Constitution nor the Act require any particular method of determining membership population.
For the 1991 general elections, the Council was apportioned among the then-new districts as follows:
Districts 6, 7, 8, and 9—one Councilor, each;
Districts 2, 3, 4, and 5—two Councilors, each;
District 1—three Councilors.
The original apportionment was based upon the United States’ government’s 1990 census. It is undisputed, by either party to this lawsuit, that changes have occurred in the membership population of the Cherokee nation’s districts since the time of the federal census, some districts have gained population, while others have lost population, in relation to each other.
Lay has offered population figures, based upon 1994 tribal registration, compiled by the Cherokee nation Office of Research and Analysis. The Defendant does not dispute the validity of these figures, but does criticize their current usefulness, given their age, for purposes of current reapportionment.
Defendant argues that the figures offered by Lay “are now four (4) years old. The numbers could have shifted once again back to the current apportionment or could have changed so that Plaintiff Lay’s district may not be entitled to more that one (1) council representative, instead of two (2) council seats for which he is currently striving.”
It should be noted that the Defendant offers only speculation on the membership population; the Defendant has not offered any evidence whatsoever regarding more-current membership population figures of any sort, or from any source. While the 1994 figures offered by Lay may be older than one might like, they are clearly more current than 1990 figures.
In 1997, the Council passed Legislative Act No. 7-97 [effective May 12, 1997] which superseded[3] the entire then-existing Cherokee election code, which, consequently and necessarily, changed 26 CNCA Section 4. However, the formula[4] for apportionment of seats on the Council between the council districts remained the same as it had been with the 1989 Act [Legislative Act 35-89] under which the original apportionment was conducted.[5]
Notwithstanding the undisputed membership population information available to the Council in 1997 that shows the current apportionment of Council seats to be in violation of the “reasonably equal” requirement of the amendment, the Council did not reapportion the seats between the districts. Indeed, not only did the Council not act to reapportion the districts with the 1997 legislation for the 1999 general election, the Council instead chose to freeze any changes in the apportionment, *26 as established in 1990, until the year 2002.[6]
Had the Council ordered reapportionment using the figures of the Cherokee Nation Office of Research and Analysis, Districts 1 and 4 would have lost one (1) seat on the Council, and Districts 6 and 8 would have each gained (1) seat on the Council.
CHEROKEE LAW
The second paragraph of Article V, Section 3, of the Cherokee Constitution, states:
The Council shall establish representative districts which shall be within the historic boundaries of the Cherokee Nation of Oklahoma. These districts shall be apportioned to afford a reasonably equal division of tribal membership among the districts.
The Cherokee Constitution, while requiring a fifteen (15) member Council, does not specify how many districts shall be established (obviously more than one is required), nor does it establish, or give guidance regarding, the boundaries of the districts. By the plain meaning of the words used in the Constitution, both of those tasks are left to the Council, and the Council has fulfilled its constitutional obligation.[7]
The issues raised by the parties in this lawsuit arise from the second sentence of Article V, Section 3, and the enactment of the Council in response to that section of the Constitution. These questions may be generally stated as follows.
1. What is required to be done, when and how often, regarding apportionment, with the following constitutional language? These districts shall be apportioned to afford a reasonably equal division of tribal membership among the districts.
2. Is 26 CNCA Section 4(C),[8] (D),[9] per se, in conformity with Article V, Section 3, mandate?
3. With the figures for the 1994 tribal registration compiled by the Cherokee Nation Office of Research and Analysis, is 26 CNCA Section *27 4(C)(D) as to be applied for the 1999 general election in conformity with the Article V, Section 3, mandate?
ANALYSIS
It should first be noted that the Court pays great deference to the enactments of the Council and the constitutional responsibilities of the Council. For reasons to be explained later, to decide these issues in this lawsuit it is unnecessary for the Court to answer the first question posed, and the Court shall, therefore no do so. With the answer to the third question, answered later herein, as to the 1999 general election, the second question becomes moot.
There is no question that the Constitution grants important powers to the Council. However, that provision of the Cherokee Constitution which says the Council shall “establish” “necessary and proper laws for the good of the nation” contains a limiting provision. The first sentence of Article V, Section 7 reads:
The Council shall have the power to establish laws which it deems necessary and proper for the good of the Nation, which shall not be contrary to the provisions of this Constitution [emphasis added].
In other words, Article V, Section 7 grants the Council wide powers to make the laws of the Cherokee Nation, but the Council may not violate the Constitution in so doing.
The Defendant has urged that if the Court finds that there is a problem with 26 CNCA Section 4(C), (D) in relation to Article V, Section 3, of the Constitution, that we also find that it is a matter for the Council to resolve. If, however, the Court were to adopt Defendant’s reasoning, the Court would be violating Articles IV, VII, and XIII of the Cherokee Constitution.
This Court, akrne, has the responsibility, under Article VII of the Cherokee Constitution, to hear and resolve any disagreements arising under any provisions of .. . [the] Constitution or any enactment of the Council, Article VII also provides that: The decision of the Judicial Appeals Tribunal shall be final insofar as the judicial process of the Cherokee nation is concerned.
The Court does not need to ascertain whether a delay of twelve (12) years between apportionment of Council districts is per se constitutional or unconstitutional. When there are two possible interpretations of an enactment by the Council, one which would render it unconstitutional, this Court, if at all possible, will adopt the alternative construction which will uphold the enactment.[10] A hypothetical argument might be made finding that there is a compelling need for reapportionment only being conducted every twelve (12) years is constitutional. This Court does not deal with hypothetical questions, except when used as examples to explain a “real” question.
The questions for the Court are:
1. Would a delay in reapportionment until the year 2002 be reasonable, or unreasonable, in light of the fact that the 1994 numbers showed a need for reapportionment in 1997? And an answer to this question turns on the answer to the question.
2. Did the Council have a constitutionally reason to override and/or disregard the clear and convincing evidence of the need for reapportionment when they enacted Legislative Act 7-97, Section 4(C), (D)?
*28 A good part of the answers to these questions is found in the following, excellent statement of Cherokee law taken from the Defendant’s brief. Dejenduid agrees that if the Cherokee government is to be truly representative of the people, apportionment should be conducted whenever the population figures bear out the need to do so.
In 1997 the Council of the Cherokee nation had before it clear, convincing and undisputed evidence that reapportionment should be conducted prior to the 1999 general election. The population figures bore out the need, to do so. There has not been presented ANY compelling argument as to why reappoHionment should not have been provided for in the 1997 enactment.
The argument against conducting reapportionment, now, is, basically, it is too late to do it for the 1999 general elections. The Defendant speculates as to horrible results that would result if the Court should rule for the Plaintiff and order reapportionment for the 1999 elections, such as, To make a, change in the districts in [sic] this late date could, cause enormous confusion ..., and, There is no time for the Election Commission to make proposals for federal funding to assist in hiring more personnel or acquiring more equipment ... Defendant’s fears lack merit and are not convincing.
IT IS FOUND, ADJUDGED AND DECREED that Legislative Act 7-97, Section 4(C), (D) [codified as 26 CNCA Section 4(C), (D) ] AS APPLIED TO THE 1999 GENERAL ELECTION, violates Article V, Section 3, of the Cherokee Constitution.
We agree with and adopt the sound reasoning of the United States Supreme Court when we find that, Article V, Section 3, of our Cherokee Constitution calls for One Cherokee, One Vote.[11]
A postponement of the reapportionment of the Districts until 2002 violates the present right of every Cherokee voter to equal representation in Council of the Cherokee Nation as guaranteed under the Cherokee Constitution.
IT IS ORDERED that for the 1999 general election, the number of Councilors to be elected from and for each of the nine (9) districts of the Cherokee nation are as follows:
NUMBER OF DISTRICT COUNCILORS
1. Cherokee (Cherokee County) 2
2. Trail of Tears (Adair County) 2
3. Sequoyah (Sequoyah County) 2
4. Three Rivers (McIntosh, Muskogee and Wagoner Counties) 1
5. Delaware (Delaware and Ottawa Counties) 2
6. Mayes (Mayes County) 2
7. Will Rogers (Rogers County) 1
8. Oolagah (Tulsa and Washington Counties) 2
9. Craig (Craig and Nowata Counties) 1
Total 16
IT IS FURTHER ORDERED that the Election Commission of the Cherokee nation, created by Legislative Act 7-97, Section One, et seq. [codified as 26 CNCA Section One, et seq.] is to conduct the 1999 general elections for Council of the Cherokee nation in accordance, and in full compliance, with this ORDER of the Court.
With today’s ruling, the District lines do not change, only the number of Councilors to be chosen for districts 1, 4, 6, and 8 changes.
The Court takes judicial notice that the filing period for candidates for Council does not open until February 1, 1999. Obviously, ballots have not been prepared. Moreover, it is presently 1998, not 1898, *29 and the Cherokee Nation already has at (11) its command and disposal considerable computer power and highly talented, motivated employees. The Election Commission is, or should be, “up and running.” There should be no, or very little need for additional funding or personnel.
Lastly, it should be noted that the Court is not striking down 26 CNCA Section 4(D) in its entirety, only its application to the 1999 general election. Therefore, after the 1999 election, under the Code as the Council presently has it written, another apportionment shall be conducted prior to June 30, 2002. By necessity 26 CNCA Section 4(C) is struck down as unconstitutional as applied to the 1999 general elections and it will be made moot for the 2003 general elections by virtue of the reapportionment that is to be conducted in 2002.
RALPH F. KEEN, JUSTICE, Assigned Pursuant to 20 CNCA App. Rule 3a (12)

. The language of the Stipulation is as follows: The parlies hereby stipulate and agree that all previously named defendants will be and are hereby dismissed from this action upon the substitution of the Cherokee Nation as party defendant. It is further agreed that the Cherokee Nation will not attempt to raise its sovereign immunity in those proceedings. The parties further acknowledge that should plaintiff prevail herein that it may or may not be necessary for this court to enter certain orders directing any or all of them to carry out the judgment herein. Signed by: Jim Wilcox-en, Attorney for Plaintiff; Donald Hopkins, Attorney for Defendant, Margaret Riney; and. Linda Donelson, Attorney for all remaining Defendants. Approved by Justice Ralph F. Keen, Judicial Appeals Tribunal. Filed November 24, 1998.

. The Cherokee Code formula for apportionment of Council seats between nine (9) districts is as follows: Said apportionment shall be attained by first dividing the combined total population of all members of the Cherokee Nation residing within the historical boundaries of the Cherokee Nation by fifteen (IS). This figure must then be divided into the total population of all members of the Cherokee Nation residing within each district. The re- *25 suiting percentage shall determine the number of representatives per district. All percentage points. 5 higher shall be rounded upward to the nearest whole number and all percentage points less than .5 shall be rounded downward to the nearest whole number.

.Section One of said Act.

. See prior footnote for the language of the Cherokee Code apportionment formula.

. Indeed, prior to that time Section 4 had been amended by Legislative Act 7-93, eff. November 6, 1993; and Legislative Act 2-94, eff. July 11, 1994, but in spite of each amendment, the apportionment formula always remained the same.

. The first: sentence of 26 CNCA Section 4(D) [LA 7-97] reads: Apportionment of representation having been first conducted in 1990, shall be conducted every twelve years thereafter, and shall be included no later than June 30 of the year preceding a regular election year.

. See 26 CNCA Section 4(A)(B) [LA 7-97],

. 26 CNCA Section 4(C) [LA 7-97] Number of Representatives for Each District. Pursuant to apportionment conducted in 1990, eligible voters from Districts 6, 7, 8 and 9 shall elect one representative each to the Council. Eligible voters from Districts 2, 3, 4 and 5 shall elect two representatives each to the Council by casting votes for up to two candidates, provided that if only one vote is case, that vote will still be counted. District 1 shall elect three representatives to the Council by casting votes for up to three candidates, provided that if less than three votes are cast, the votes will still be counted.

.26 CNCA Section 4(D) [LA 7-97] Apportionment. Apportionment of representatives having been first conducted in 1990, shall be conducted every twelve years thereafter, and shall be conducted no later than June 30 of the year preceding a regular election year. Apportionment shall be conducted by the Election Commission and approved by the Council by amendment of this section. Said apportionment shall be attained by first dividing the combined total population of all members of the Cherokee Nation residing within the historical boundaries of the Cherokee Nation by fifteen (15). This figure must then be divided into the total population of all members of the Cherokee nation residing within each district. The resulting percentage shall determine the number of representatives per district. All percentage points .5 or higher shall be rounded upward to the nearest whole number and all percentage points less than .5 shall be rounded downward to the nearest whole number.

. Phillips v. Eagle, JAT 98-09; City of Norman v. Liddell, 596 P.2d 879 (Okl.1979).

. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481.